KELLEY DRYE & WARREN LLP
  Miles M. Cooley (State Bar No. 206783)
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, CA 90067-4008
Telephone:    (310) 712-6100
Facsimile:     (310) 712-6199
mcooley@kelleydrye.com
Attorneys for Defendants

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
Geoffrey W. Castello (*pro hac vice* forthcoming)
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone:   (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
gcastello@kelleydrye.com

*The Häagen-Dazs Shoppe Company, Inc.,*
*Nestlé Dreyer's Ice Cream Company, and Nestlé USA, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE G. SAN PEDRO-SALCEDO, individually, and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>THE HÄAGEN-DAZS SHOPPE COMPANY, INC., a New Jersey corporation; NESTLÉ DREYER'S ICE CREAM COMPANY, a Delaware corporation; NESTLÉ USA, INC., a Delaware corporation; and DOES 1 through 50,<br><br>Defendants. | Case No. 5:17-cv-03504-EJD<br><br>**DEFENDANTS THE HÄAGEN-DAZS SHOPPE COMPANY, INC., NESTLÉ DREYER'S ICE CREAM COMPANY, AND NESTLÉ USA, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE STAY THIS ACTION**<br><br>Action Filed:    May 18, 2017<br>Trial Date:    None Set |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on October 12, 2017, at 9:00 a.m., or as soon thereafter as

3    possible, in the courtroom of the Honorable Edward J. Davila located at San Jose Courthouse,

4    Courtroom 4 at 280 South 1st Street, San Jose, CA 95113, defendants the Häagen-Dazs Shoppe

5    Company, Inc., Nestlé Dreyer's Ice Cream Company, and Nestlé USA, Inc., (collectively

6    "Defendants") will and hereby move for an order dismissing Plaintiff's Complaint pursuant to

7    Fed. R. Civ. P. 12(b)(6), or, in the alternative, for a stay pending the decision of the D.C. Circuit

8    Court of Appeals in *ACA International v. FCC, et al.*, No. 15-1211.

9    Plaintiff fails to state a claim under the Telephone Consumer Protection Act, 47 U.S.C.

10   § 227 ("TCPA").  Plaintiff's TCPA claim is barred by her prior express consent to receive the

11   text message at issue.  Plaintiff also insufficiently pleads Defendants' use of an automatic

12   telephone dialing system.  In the event that the Court is not inclined to dismiss the Plaintiff's

13   Complaint, the Court, alternatively, should stay this action pending *ACA International*.

14   The Motion is based on their Notice of Motion, the attached Memorandum of Points and

15   Authorities, Request for Judicial Notice, all pleadings and papers on file in their action, and any

16   oral argument or documentary matters as may be presented to the Court at or before the hearing

17   on their Motion.

18

19   DATED: July 21, 2017                        KELLEY DRYE & WARREN LLP
                                                 Miles M. Cooley
20

21                                               By:    /s/ Miles M. Cooley
                                                 Miles M. Cooley
22                                               Attorneys for Defendants
                                                 *The Häagen-Dazs Shoppe Company, Inc.,*
23                                               *Nestlé Dreyer's Ice Cream Company and*
                                                 *Nestlé USA, Inc.*
24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

     A.     Plaintiff's Complaint ............................................................................... 2

III.    ARGUMENT ....................................................................................................... 4

     A.     The Court Should Dismiss Plaintiff's Complaint Under Rule 12(b)(6). ............ 4

          1.     The Legal Standard ................................................................. 4

          2.     Plaintiff's Admission That She Provided Prior Express Consent To
               Receive The Text Message At Issue Is A Bar To Her Claim ................. 4

               (a)     The Text Was Not An Advertisement ....................................... 6

               (b)     Plaintiff Concedes That She Gave Her Prior Express Consent
                     When She Provided Her Wireless Phone Number To The
                     Häagen-Dazs Cashier ........................................................... 10

          3.     Plaintiff's Complaint Should Be Dismissed Because She Failed to
               Adequately Plead That An ATDS Was Used ..................................... 12

     B.     In the Alternative, This Court Should Stay This Case
         Pending the D.C. Circuit's Decision in ACA International. ........................... 14

          1.     Legal Standard ..................................................................... 14

          2.     All of the *Landis* Factors Favor the Entering of a Stay Here ............... 16

IV.     CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Federal Cases**                                                                          **Page(s)**

*ACA International v. FCC, et al.*,
No. 15-1211 (D.C. Cir.) ................................................................... 2, 14, 15, 16, 17, 18

*Acton v. Intellectual Capital Mgmt., Inc.*,
Case No. 15-CV-4004(JS)(ARL), 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015)............. 16

*Aderhold v. Car2go N.A., LLC*,
No. C13-489RAJ, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014), *aff'd*, No. 2-13-cv-00489-RAJ, 2016 WL 4709873 (9th Cir. Sept. 9, 2016) ............................................ 5, 6, 8

*Alleman v. Yellowbook*,
No. 12-cv-1300-DRH-PMF, 2013 WL 4782217 (S.D. Ill. Sept. 6, 2013).......................... 9

*Andrews v. Ocwen Loan Servicing, LLC*,
No. 2:17-cv-01255-JAD-VCF, 2017 U.S. Dist. LEXIS 107711 (D. Nev. July 12, 2017)
............................................................................................................................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 4

*Baird v. Sabre Inc.*,
995 F. Supp. 2d 1100 (C.D. Cal. 2014), *aff'd*, 636 F. App'x 715 (9th Cir. 2016)....... 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 4

*Brickman v. Facebook, Inc.*,
Case No. 16-cv-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ................... 14

*Chesbro v. Best Buy Stores, LP*,
705 F.3d 913 (9th Cir. 2012)........................................................................................ 9, 10

*Clayton v. Synchrony Bank*,
219 F. Supp. 3d 1006, 1011 (E.D. Cal. 2016) .......................................................... 14, 17

*Clinton v. Jones*,
520 U.S. 681 (1997) ...................................................................................................... 14

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)...................................................................................... 14, 16

*Coatney v. Synchrony Bank*,
Case No. 6:16-CV-389-ORL-22TBS, 2016 WL 4506315 (M.D. Fla. Aug. 2, 2016)........ 16

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009).......................................................................................... 4

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013) ............................................................................ 4

*Daniel v. Five Stars Loyalty, Inc.*,
  No. 15-cv-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24 2015)
  ............................................................................................ 1, 2, 4, 5, 6, 7, 8

*Daniels v. ComUnity Lending, Inc.*,
  No. 13cv488-WQH-JMA, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014) .............................. 13

*Doerken v. USAA Savings Bank*,
  Case No. CV 16-08824-RSWL-MRW, 2017 WL 1534186 (C.D. Cal. Apr. 26, 2017) .... 15

*Drew v. Lexington Consumer Advocacy, LLC*,
  No. 16-CV-00200-LB, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016) ............................... 9

*Emanuel v. Los Angeles Lakers*,
  No. CV 12-0036-GW, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) ............................... 11

*Errington v. Time Warner Cable Inc.*,
  Case No. 2:15-CV-02196 RSWL (DTB), 2016 WL 2930696 (C.D. Cal. May 18, 2016)
  ................................................................................................ 15, 16, 17

*Fontes v. Time Warner Cable Inc.*,
  Case No. CV-14-2060-CAS(CWX), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015)......... 15

*Frable v. Synchrony Bank*,
  215 F. Supp. 3d 818, 823 (D. Minn. 2016) ................................................. 16, 17

*French v. Nationstar Mortgage, LLC*,
  No. 2:17-cv-00925-GMN-NJK, 2017 U.S. Dist. LEXIS 104586 (D. Nev. July 6, 2017) . 15

*Friedman v. Massage Envy Franchising, LLC*,
  No. 12-cv-2962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013)...................... 12, 13

*Friedman v. Torchmark Corp.*,
  No. 12-CV-3827-IEG (BGS), 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013)...................... 9

*Gage v. Cox Communications, Inc.*,
  Case No. 2:16-cv-02708-KJD-GWF, 2017 WL 1536220 (D. Nev. Apr. 27, 2017) .... 14, 15

*Goddard v. Google Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................. 4

*In re GroupMe, Inc./Skype Communications S.A.R.L., Petition for Expedited Declaratory Ruling*,
  29 F.C.C. Rcd. 3442, 2014 WL 1266074 (F.C.C. Mar. 27, 2014)...................................... 10

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE STAY THIS ACTION

*Huricks v. Shopkick, Inc.*,
    No. C-14-2464 MMC, 2014 WL 3725344 (N.D. Cal. July 24, 2014) ......................... 12, 13

*Ibey v. Taco Bell Corp.*,
    No. 12-CV-0583-H (WVG), 2012 WL 2401972 (S.D. Cal. June 18, 2012)................. 9, 13

*Jones v. Credit Acceptance Corp.*,
    Case No. 15-13165, 2016 WL 7320919 (E.D. Mich. Oct. 31, 2016) .............................. 15

*Knutson v. Reply!, Inc.*,
    No. 10-CV-1267 BEN, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011)................................ 13

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) ....................................................................................................... 14, 16

*Larson v. Harman Mgmt. Corp.*,
    No. 116CV00219DADSKO, 2016 WL 6298528 (E.D. Cal. Oct. 27, 2016) ...................... 9

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ............................................................................................ 14

*Marks v. Crunch San Diego*,
    No. 14-56834, Order Staying Appeal (ECF No. 62) (9th Cir. Dec. 14, 2016) ................. 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) .............................................................................................. 4

*Meyer v. Bebe Stores, Inc.*,
    No. 14-CV-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015)............................... 10

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012)............................................................................................... 5

*Murphy v. DCI Biologicals Orlando, LLC*,
    No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797
    F.3d 1302 (11th Cir. 2015).................................................................................................... 9

*Pichardo v. Amerigroup Corp.*,
    No. 2:17-cv-0276-RFB-CWH, 2017 U.S. Dist. LEXIS 88691 (D. Nev. June 8, 2017)  ... 15

*Pinkard v. Wal-Mart Stores, Inc.*,
    No. 3:12-cv-2902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ...................... 11, 12

*Rajput v. Synchrony Bank*,
    Case No. 3:15-CV-1595, 2016 WL 6433150 (M.D. Pa. Oct. 31, 2016)
    ............................................................................................................ 15, 16, 17, 18

*Ramirez v. Trans Union, LLC*,
    Case No. 12-cv-00632-JSC, 2015 WL 6159942 (N.D. Cal. June 22, 2015) .................... 16

iii

*Reardon v. Uber Tech., Inc.*,
  115 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................................... 4

*Reynolds v. Time Warner Cable, Inc.*,
  Case No. 16-CV-6165W, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017)
  ................................................................................................................ 15, 16, 17

*Roberts v. PayPal, Inc.*,
  Case No. 12–0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013), *aff'd*, 621 F. App'x 478
  (9th Cir. 2015) ................................................................................................ 10, 11

*Rose v. Wells Fargo Advisors, LLC*,
  Case No. 1:16-CV-562-CAP, 2016 WL 3369283 (N.D. Ga. June 14, 2016) ................... 16

*In re Rule & Reg's Implementing the Tel. Consumer Protection Act of 1991*,
  30 F.C.C. Rcd. 7961, 2015 WL 4387780 (F.C.C. July 10, 2015) ........................ 1, 5, 6, 17

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and
  Order*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ..................................................... 5, 10

*Ryabyshchuck v. Citibank (S. Dak.) N.A.*,
  No. 11-cv-122-IEG, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) ................................. 11

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ......................................................................... 4

*Small v. GE Capital, Inc.*,
  Case No. EDCV 15-2479 JGB, 2016 WL 4502460 (C.D. Cal. June 9, 2016) ................. 15

*Van Patten v. Vertical Fitness Grp., LLC*,
  22 F. Supp. 3d 1069, 1071 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017) .... 11, 12

*Wick v. Twilio, Inc.*,
  No. C16-00914RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ............................... 8

*Williams v. TGI Friday's Inc.*,
  Case No. 4:15-CV-1469 RLW, 2016 WL 1453032 (E.D. Mo. Apr. 12, 2016) ................ 16

**Federal Statutes**

47 U.S.C. § 227 ............................................................................................... 4, 5

47 C.F.R. § 64.1200 (2013) ............................................................................... 5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As the Chairman of the Federal Communications Commission ("FCC") put it, the Telephone Consumer Protection Act ("TCPA") "has become the poster child for lawsuit abuse, with the number of TCPA cases filed each year skyrocketing from 14 in 2008 to 1,908 in the first nine months of 2014."   Request for Judicial Notice ("RJN"), Ex. A (*In re Rule & Reg's Implementing the Tel. Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 2015 WL 4387780, at \*80 (F.C.C. July 10, 2015) ("*July 2015 FCC Order*") (Pai, A., dissenting).  Plaintiff Melanie G. San Pedro-Salcedo's ("Plaintiff") class action complaint (the "Complaint") is just another example of a litigant attempting to irrationally stretch the bounds of the TCPA in an attempt to profit based on the receipt of a single text message that she agreed to receive.

Plaintiff here admits in her Complaint that during a visit to a Häagen-Dazs store, she had a conversation with a cashier about the Häagen-Dazs Rewards program (the "Rewards Program"). In connection with that conversation, Plaintiff admits that she voluntarily provided her cellular telephone number to the cashier so that she could receive information about the Rewards Program, and shortly thereafter, received a single text providing a link that would permit her to complete registering for the Rewards Program.  Plaintiff does not allege that she ever registered for the Rewards Program.  Plaintiff hinges her claim on her allegation that she did not provide "written" consent to the cashier to receive the text message, which would only be required if the text message received constituted advertising and was sent using an "automated telephone dialing system" ("ATDS").  Plaintiff's claim, however, fails on its face because the single text message at issue does not constitute advertising and, even if an ATDS had been used (which is not the case), Plaintiff admits in her Complaint that she voluntarily provided the requisite level of "prior express consent."

Plaintiff's Complaint here is the second of its type filed by the same group of attorneys who seek to expose legitimate businesses to extraordinary, class-wide TCPA liability for a single text message that the plaintiff agreed to receive in order to register for a customer loyalty or rewards program.  In the first suit filed by Plaintiff's counsel, *Daniel v. Five Stars Loyalty, Inc.*,

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE STAY THIS ACTION

No. 15-cv-03546-WHO, 2015 WL 7454260, at *3 (N.D. Cal. Nov. 24 2015), the plaintiff in that action had lunch at a Flame Broiler restaurant in North Hollywood, and (as here) after discussing a loyalty program with the cashier, provided his wireless number to the cashier so that he could join the program.  The plaintiff then received a single text message about the loyalty program, and soon thereafter, filed a TCPA Class Action Complaint.  The Court in *Five Stars Loyalty, Inc.* granted the defendant's motion to dismiss finding that the plaintiff admitted in his Complaint that he provided prior express permission to receive the text message at issue, and therefore had no viable TCPA claim. *Id.* at *7.  The same is true here and the Court should reach the same result.  Plaintiff does not have a claim under the TCPA because she admits in her Complaint that she consented to receive the single text message that serves as the basis for her claim.  The text that Plaintiff consented to receive does not constitute advertising as would be required for an actionable TCPA claim based on the failure to obtain "prior express **written** consent."  For this reason alone, Plaintiff's Complaint should be dismissed with prejudice.

Plaintiff's Complaint is also subject to dismissal because her allegations with respect to Defendants' alleged use of an ATDS provide the Court with nothing more than a recitation of the elements under the TCPA.  If the Court is not inclined to dismiss the Complaint because of Plaintiff's admission that she consented to receive the text message at issue, or because of her failure to adequately plead the element of ATDS, this Court should stay the case pending the decision of the United States Court of Appeals for the D.C. Circuit in *ACA International v. FCC, et al.*, No. 15-1211 (D.C. Cir.).  In *ACA International*, the D.C. Circuit will address, among other things, the definition of ATDS under the TCPA.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Complaint[1]

On May 18, 2017, Plaintiff filed a Class Action Complaint in the Superior Court of California, County of Santa Clara claiming that Defendants violated Section 227(b)(1) of TCPA

---

[1] Defendants do not concede or admit the veracity of the allegations in the Complaint.

after Häagen-Dazs sent her a single text message on April 22, 2017. (Dkt. No. 1, Ex. A, "Compl.")
On June 16, 2017, Defendants timely removed the case to this Court. (Dkt. No. 1.)

According to Plaintiff, on April 22, 2017, she visited a Häagen-Dazs in San Jose.  (Compl.
¶ 13.)  Plaintiff alleges that "[t]he Häagen-Dazs cashier orally asked [her] if she would like to
enroll in a rewards program for discounts on future purchases.   The cashier then asked for
Plaintiff's telephone number. . . ."  (*Id.*)  Plaintiff admits that she responded by providing her
phone number to the cashier orally.  (*Id.*)  Plaintiff alleges that she then received a text message
on her cellular telephone stating: "Thank you for joining Haagen-Dazs Rewards!  Download our
app here:." [sic.]  (*Id.* ¶ 14.)  Plaintiff alleges that the text message "contained a link to download
a mobile-device application, or 'app.'"  (*Id.*)  That app would have allowed Plaintiff to complete
registering for the Rewards Program. (*See id.*)

Plaintiff does not allege that she downloaded the app, but instead she contends that "[b]y
encouraging the use of the app, the text message sent to [her] constitutes telemarketing or
advertising."  (*Id.* ¶ 15.)  Plaintiff, therefore, does not allege that she actually received any
telemarking or advertising from Defendants, but rather that she was "encourage[ed]" to use an
app that would potentially provide her with advertising.

Plaintiff also alleges that she "had never given any signed authorization to anyone
expressly permitting Defendants, or anyone acting on their respective behalves, to use her
cellular-telephone number for telemarketing or advertising purposes." (*Id.* ¶ 16.)  Plaintiff also
alleges that she "is informed and believes, and based thereon alleges, that her cellular-telephone
number was entered into a database and that Defendant used equipment capable of storing and/or
producing telephone numbers, as well as capable of dialing such numbers, to send the above-
referenced text message to [her]." (*Id.* ¶ 20.)

In addition to bringing her individual claim, Plaintiff also seeks to represent a nationwide
class of "[a]ll persons throughout the United States who, since October 16, 2013, received at least
one text message from Defendants on their cellular telephones." (*Id.* ¶ 22.)  Plaintiff alleges that
she and the putative class are entitled to $500-$1,500 for each text message sent, as well as
injunctive relief. (*Id.* ¶ 34.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   ARGUMENT

**A.   The Court Should Dismiss Plaintiff's Complaint Under Rule 12(b)(6).**

#### 1.   The Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). Dismissal under Rule 12(b)(6) is appropriate where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

In the context of the TCPA, courts have granted defendants' motions to dismiss pursuant to Rule 12(b)(6) where a plaintiff, as here, concedes in her Complaint that she provided her wireless telephone number to the defendant.[2] *Reardon v. Uber Tech., Inc.*, 115 F. Supp. 3d 1090 (N.D. Cal. July 19, 2015); *see also Five Stars Loyalty, Inc.*, 2015 WL 7454260. For the reasons set forth more fully below, this Court too should dismiss Plaintiff's Complaint because it fails to state a claim upon which relief can be granted.

#### 2.   Plaintiff's Admission That She Provided Prior Express Consent To Receive The Text Message At Issue Is A Bar To Her Claim

Section 227(b)(1)(A)(iii) of the TCPA, under which Plaintiff claims here, makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ATDS"] or

---

[2] The assertion of an affirmative defense may properly be considered on a motion to dismiss where the "allegations in the complaint suffice to establish" the defense. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n.5 (N.D. Cal. 2009) ("[A]ffirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the Complaint").

4

an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to adequately plead a TCPA claim, a plaintiff must allege sufficient facts to support that (i) an ATDS was used, (ii) to send a non-emergency call or text message to a wireless number; and (iii) without the recipient's consent. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

Consent to a text or call serves as "an escape route for a caller who might otherwise face TCPA liability." *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *3 (W.D. Wash. Feb. 27, 2014), *aff'd*, No. 2-13-cv-00489-RAJ, 2016 WL 4709873 (9th Cir. Sept. 9, 2016). Indeed, there is no violation of the TCPA if a text message sent with an ATDS is supported by the requisite level of consent. *See id.* Under the FCC's "current implementing regulation, which took effect on October 16, 2013, the level of prior consent required to remove a call from the second of Section 227(b)(1)(A)(iii) depends on the character of the call." *Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *3. A text or call that "includes or introduces an advertisement or constitutes telemarketing" may be sent with the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2) (2013). "With respect to other calls – i.e., calls that do not include or introduce an advertisement or constitute telemarketing – only 'prior express consent' is required." All other texts and calls require only "prior express consent." *Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *3, *citing* 47 C.F.R. § 64.1200(a)(1) (2013). Here, Plaintiff provided, and Defendants received, the required level of consent.

The FCC has determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Car2go*, 2016 WL 4709873, at *1, *quoting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992). The FCC has clarified in its *July 2015 FCC Order* that prior express consent is satisfied when a consumer provides his or her wireless number orally to a sender of a text message. *See also July 2015 FCC Order*, 30 F.C.C. Rcd. 7961, 52 ("[E]xpress consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence

of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call.").[3]

Here, Plaintiff admitted in her Complaint that she provided "prior express consent" to receive non-advertising text messages about the Rewards Program when she voluntarily provided her wireless number to the cashier in the context of their discussion about that program.  Given this admission, Plaintiff's "gotcha" argument is that she has a TCPA claim, despite having provided prior express consent, because the single text message at issue is advertising and required "written," rather than oral, consent.

### (a) The Text Was Not An Advertisement

The TCPA regulation defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services" and "telemarketing" as "the initiation of a . . . message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ."  47 C.F.R. § 64.1200(f)(1) and (12).  Federal courts agree that a call or text message does not qualify as "telemarketing" or "advertising" where the text does not directly encourage the purchase of products or services.  *See, e.g., Car2go*, 2016 WL 4709873, at *1 (text "directed . . . to completing the registration process initiated by [the plaintiff] and to validating personal information" was not "telemarketing" because it did not "contain[ ] content encouraging purchase of [defendant's] services"); *Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *1, *5.  Here, the single text message at issue does not directly encourage the purchase of Häagen-Dazs products or services, and therefore does not qualify as telemarketing or advertising.

Plaintiff does not allege that the single text constituted or qualified as either as either an "advertisement" or "telemarketing."  Rather, as Plaintiff admits in her Complaint, the text merely "encourage[ed] the use of the app." (Compl. ¶ 15.)  That admission makes clear that the text did not encourage the purchase of any of Häagen-Dazs products or services.  According to Plaintiff's

---

[3]  In addition, the FCC has found that a one-time text, even one that includes a coupon, is not telemarketing or advertising if it responds to a consumer's request for the coupon or information.  *See July 2015 FCC Order*, 30 F.C.C. Rcd. 7961, 52 at ¶¶ 103-106.

pleading, it was simply a vehicle to direct her to a link that brought her to the app.  Plaintiff does not even allege that she ever registered for the app.  Plaintiff's real gripe appears to be with the app itself, however, she fails to allege that she ever accessed or viewed the app.  Instead, she only explains that the app is "available for download on iPhone and Android devices."  (*Id*.)  Again, she explains what she thinks the app can do, but never alleges that she accessed any content on the app.  Further, Plaintiff does not even allege that the app itself constitutes either "telemarketing" or "advertising," she only alleges that "encouraging the use of the app [ ] constitutes telemarketing or advertising." (*Id*.)  Plaintiff's theory of liability makes no sense under the TCPA.  Encouraging the use of an app as alleged by Plaintiff in the Complaint is one or more steps away from the receipt of any actual "telemarketing" or "advertising" and does not invoke TCPA liability.[4]   Accordingly, Plaintiff is forced to make a huge leap of logic from the single text, which she invited, to the app, which she implies, but does not expressly plead, "constitutes telemarketing or advertising."  This leap of logic fails because Plaintiff never alleges that she ever attempted to access the app or that she ever received any "telemarketing" or "advertising" despite the fact that she voluntarily provided her mobile number to the cashier.  She merely concludes that the text encouraged her to use the app and *if* she used the app she *may* have been exposed to "telemarketing" or "advertising."

Plaintiff's allegation here, that the text message at issue is advertising, is similar to the allegation made in *Five Stars Loyalty, Inc.*  The plaintiff in *Five Stars Loyalty, Inc.* had visited a Flame Broiler restaurant and had a discussion with the cashier about a Five Stars consumer rewards program. 2015 WL 7454260, at *1.  The cashier informed the plaintiff about the program, namely, about how customers earn points for food purchases and about how those points can be used to purchase more food.  *Id.* The plaintiff admitted in his Complaint that he provided his telephone number to the cashier.  *Id.*  Not long after, the plaintiff received a text message from Five Stars stating: "Welcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Txt STOP to unsubscribe."  *Id.*  The Court in

---

[4] Defendants dispute that the app constitutes or qualifies as either telemarketing or advertising.

1    *Five Stars Loyalty, Inc.* held that the text message at issue did not constitute advertising, even

2    though it related to a marketing rewards program. *Id.*

3         Similarly, in *Car2go*, the Court dismissed a plaintiff's TCPA claims under Rule 12(b)(6),

4    and the Ninth Circuit affirmed that result.  There, the plaintiff submitted an on-line registration

5    form for membership in Car2go, at which point he then received an email and a text message

6    about how to complete the registration process.  2014 WL 794802, at *3.  The text stated: "Please

7    enter your car2go activation code 145858 into the emailed link.  We look forward to welcoming

8    you to car2go." *Id.*  The plaintiff argued that this was a telemarketing text because it directed him

9    to place an activation code into an email that connected to the Car2go website that contains

10   promotions for the Car2go service. *Id.* at *9. The Court disagreed, and found this text message

11   to be non-advertising.

12        *Wick v. Twilio, Inc.*, No. C16-00914RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016),

13   is also on point.  In that case, the plaintiff had accessed the "Crevalor" website, a site that offered

14   a free sample of a pre-workout supplement.  In order to receive the sample, the plaintiff entered

15   his name, address and cell phone number into a form on the website.  The plaintiff then decided

16   against continuing with the order and closed the webpage.  The plaintiff later received a text

17   message stating "[y]our order at Crevalor is incomplete and about to expire.  Complete your order

18   by visiting [link]." *Wick*, 2015 WL 6460316 at * 1.  The text was followed by a phone call with

19   a similar message. *Id.*  The Court found that the "text and call received by plaintiff were also

20   related solely to the consumer transaction he had initiated," and therefore did not constitute

21   telemarketing. *Id.* at *3.  The Court granted the defendant's motion to dismiss. *Id.* at *4.

22        As in *Five Stars Loyalty, Inc.*, *Car2go*, and *Wick*, the text message that Plaintiff received

23   here was not an "advertisement" or "telemarketing" because the text does not encourage Plaintiff

24   to purchase property, goods, or services.  This conclusion does not change merely because the

25   text message included a link to the Häagen-Dazs Rewards mobile app.  On its face the text

26   message does *not* encourage Plaintiff to make any purchases, nor does it encourage Plaintiff to

27   earn or redeem reward points.  (Compl. ¶ 14.)  There is no indication that the text was intended

28   for anything other than the limited purpose of joining the Rewards Program, by visiting the app.

(*Id.*)  Plaintiff's own allegations regarding her voluntary interactions with the cashier further support that this was merely a confirmatory informational text message, rather than an advertisement or telemarketing.  (*Id.* at ¶ 13.)

Many courts have found that informational and confirmation text messages and calls, similar to the text message at issue here, do not constitute advertisements or telemarketing.  *See, e.g., Alleman v. Yellowbook*, No. 12-cv-1300-DRH-PMF, 2013 WL 4782217, at *6-7 (S.D. Ill. Sept. 6, 2013) (concluding phone message "did not promote or advertise any product for sale" and noting "[o]n its face, the call is not part of a marketing campaign to sell additional products … [i]ts intent is to confirm the caller's receipt of the free Yellowbook directory"); *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015) (concluding message offering to pay plaintiff for making another blood donation did not encourage purchase of property, goods, or services); *Friedman v. Torchmark Corp.*, No. 12-CV-3827-IEG (BGS), 2013 WL 1629084, at *4-5 (S.D. Cal. Apr. 16, 2013) (concluding defendant's calls to plaintiff regarding recruiting webinar concerning opportunity for plaintiff to earn money was not an "advertisement" because it did not encourage purchase of property, goods, or services); *see also Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (dismissing TCPA claim noting, "Defendant's single, confirmatory text message did not constitute unsolicited telemarketing; Plaintiff had initiated contact with Defendant").

The content of the text message also contrasts starkly with messages that courts have deemed to be telemarketing or advertising, which unequivocally evoke or reference commerce.  *See, e.g., Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2016 WL 6298528, at *1, *3–4 (E.D. Cal. Oct. 27, 2016) ("Float into A & W for a 99 cent Reg. Sized Root Beer Float! Limit 1."); *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-CV-00200-LB, 2016 WL 1559717, at *1, *6 (N.D. Cal. Apr. 18, 2016) ("Struggling to get ahead but your cash advances holding you back? We can make them go away . . . call 4753291921 for info."); *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 918 (9th Cir. 2012) (calls urging recipient to "redeem" Reward

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE STAY THIS ACTION

1   Zone points); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *3 (N.D.

2   Cal. Feb. 2, 2015) (message offering "10% OFF reg-price in-store/online").

3          Accordingly, this Court should find that the text message at issue does not qualify as

4   advertising.

5          **(b)      Plaintiff Concedes That She Gave Her Prior Express Consent When
              She Provided Her Wireless Phone Number To The Häagen-Dazs**

6          **Cashier**

7          Because the text message at issue is not an advertisement, by Plaintiff's own admission,

8   it did not violate the TCPA as it was sent with her prior express consent.  Indeed, the law is clear

9   that the "prior express" requirement is satisfied when an individual provides her cellular phone

10  number to a business.  *See, e.g., Roberts v. PayPal, Inc.*, Case No. 12–0622, 2013 WL 2384242,

11  at *3 (N.D. Cal. May 30, 2013), *aff'd*, 621 F. App'x 478 (9th Cir. 2015); *Baird v. Sabre Inc.*, 995

12  F. Supp. 2d 1100, 1107 (C.D. Cal. 2014), *aff'd*, 636 F. App'x 715 (9th Cir. 2016).  In a 1992

13  rulemaking action implementing the TCPA, the FCC ruled that "persons who knowingly release

14  their phone numbers have in effect given their invitation or permission to be called at the number

15  which they have given, absent instructions to the contrary."  RJN, Ex. B (*In re Rules & Reg's*

16  *Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769, 1992 WL 690928,

17  at *11 ¶ 31 (F.C.C. Oct. 16, 1992)) ("1992 FCC Order") (citing H.R. Rep. No. 102-317, at 13

18  (1991)) ("[T]he called party has in essence requested the contact by providing the caller with their

19  telephone number for use in normal business communications")).  "Myriad federal district courts

20  have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business

21  with their telephone number and then received a text message from the business had no claim

22  under the act."  *Baird,* 95 F. Supp. 2d at 1102-03 (collecting cases); *see also* RJN Ex. C

23  (*Declaratory Ruling of the Federal Communications Commission Adopted on March 27, 2014,*

24  *Regarding the In re GroupMe, Inc./Skype Communications S.A.R.L., Petition for Expedited*

25  *Declaratory Ruling*, 29 F.C.C. Rcd. 3442, 2014 WL 1266074, at *3 ¶ 10 (F.C.C. Mar. 27, 2014))

26  (FCC confirms continued applicability of 1992 FCC Order statement that "persons who

27  knowingly release their phone numbers have in effect given their invitation or permission to be

28  called at the number which they have given, absent instructions to the contrary.")

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE STAY THIS ACTION

Where, as here, a plaintiff makes clear on the face of her complaint that she provided her telephone number to the defendants, courts find there was prior express consent and dismiss the TCPA claim.  *See, e.g., Emanuel v. Los Angeles Lakers*, No. CV 12-0036-GW (SHx), 2013 WL 1719035, at *3-4 (C.D. Cal. Apr. 18, 2013).  In that case, the plaintiff initiated communications with the Lakers by requesting that a message appear on the Staples Center scoreboard.  *See also Baird*, 995 F. Supp. 2d at 1106 (dismissing TCPA claim because "[Plaintiff 'knowingly release[d]' her cellphone number to Hawaiian Airlines when she booked her tickets, and by doing so gave permission to be called at that number by an automated dialing machine"); *Roberts*, 2013 WL 2384242, at *4-5 (dismissing TCPA claim because "the court finds that plaintiff consented to receive text messages from PayPal simply by providing his cell phone number"); *Ryabyshchuck v. Citibank (S. Dak.) N.A.*, No. 11-cv-122-IEG, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012) (dismissing TCPA claim because "lone text message at issue was sent to a number voluntarily provided by Plaintiff to Defendant").

For example, in *Vertical Fitness*, the plaintiff provided his phone number upon joining the gym, but cancelled his membership soon thereafter.  *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1071 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017).  There was no dispute that the plaintiff:

> never actually said to Vertical Fitness, 'Yes, you may text me at the number I have given you,' or anything like that. He never signed her name or initialed next to a disclaimer that by providing her phone number to Vertical Fitness he was welcoming text messages. As the Court said above, when [the plaintiff] joined the Gold's Gym, the subject of text messages never came up. . . .  [The plaintiff] simply provided her phone number on an application card with no discussion of why Gold's Gym needed it or what they would do with it.

*Id.* at 1073.  Months later, the plaintiff received texts stating, "Gold's Gym is now Xperience Fitness.  Come back today for $9.99/month, no commitment.  Enter for a chance to win a Nissan Xterra."  *Id.* at 1072.  The Court found that Plaintiff "consented to receiving the texts . . . when he provided his phone number upon joining the gym" and dismissed the TCPA claim.  *Id.* at 1078.

In a similar case, the plaintiff dropped off a prescription with a Wal-Mart pharmacy and provided her cell number to Wal-Mart upon request.  *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-

11

cv-2902-CLS, 2012 WL 5511039, at *2 (N.D. Ala. Nov. 9, 2012).  Notably, none of Wal-Mart's employees explicitly sought permission to send Plaintiff text messages.  *Id.*  Within hours of leaving her prescription at Wal-Mart, Plaintiff received a text message from Wal-Mart.  *Id*.  The Court recognized that "providing her cellular telephone number to defendant was 'clear and unmistakable' consent to be contacted at that number.  To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request."  *Id*. at 5 (dismissing TCPA claim).

Similar to *Vertical Fitness* and *Wal-Mart*, Plaintiff's own Complaint makes clear that Plaintiff provided her prior express consent here.  Plaintiff received a text message right after inquiring about the Rewards Program and after voluntarily providing her cell number.  (Compl. ¶ 13.)  The content of the complained-of text message is directly related to the circumstances under which Plaintiff provided her cell phone number.  That admission damns Plaintiff's venture here and makes her claim non-actionable.  Thus, Plaintiff's TCPA claim should be dismissed with prejudice.

### 3.  Plaintiff's Complaint Should Be Dismissed Because She Failed to Adequately Plead That An ATDS Was Used

Plaintiff also contends that the single text message that she received was sent to her cellular phone by an ATDS.  If an ATDS was not used to send the text message at issue, Plaintiff has no claim under the TCPA.  Here, Plaintiff fails to adequately allege that an ATDS was used.  Rather, her own allegations suggest that no ATDS was used.

Numerous courts have dismissed Complaints where, as here, the plaintiff makes only a conclusory allegation regarding the alleged use of an ATDS.  *See, e.g., Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2014 WL 3725344, at *2 (N.D. Cal. July 24, 2014) (dismissing TCPA claim because allegation that the "ATDS . . . had the capacity to store or produce telephone numbers to be contacted using a random or sequential number generator . . . [and] to generate numbers and dial them without human intervention" were "conclusory" and lacked facts to support that Defendant used an ATDS); *Friedman v. Massage Envy Franchising, LLC*, No. 12-

cv-2962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (dismissing TCPA claim because Plaintiff's allegations were nothing more than a "formulaic recitation of the elements" and it was "just as conceivable that the text messages were done by hand, or not using an ATDS"); *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN (WMc), 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) ("[I]t is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'  Such a naked assertion need not be taken as true.").

Other courts have dismissed TCPA claims where, as here, a plaintiff's own allegations suggest direct targeting that is inconsistent with the random or sequential number generation required for an ATDS.  *See, e.g., Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (dismissing TCPA claim because Defendant's alleged calls to Plaintiffs "do not appear to have been 'random' . . . instead, the calls are alleged to be directed specifically toward Plaintiffs"); *Knutson*, 2011 WL 291076, at *2 (dismissing TCPA claim where "[t]here [was] nothing in the complaint that allow[ed] the court to infer the calls were randomly generated or impersonal"); *Ibey*, 2012 WL 2401972, at *1-*3 (dismissing TCPA claim because allegation that message was sent using ATDS was insufficient where message was in "direct response" to Plaintiff and "did not appear to be random").

In this case, with respect to the element of an ATDS, Plaintiff pleads only that she "is informed and believes, and based thereon alleges, that her cellular-telephone number was entered into a database and that Defendant used equipment capable of storing and/or producing telephone numbers, as well as capable of dialing such numbers, to send the above-referenced text message to [her]."  (Compl. ¶ 20.)  This bald allegation is a naked assertion that need not be taken as true, and is insufficient to withstand dismissal of her TCPA claim.  Moreover, Plaintiff's own allegations regarding her receipt of a text message immediately following her conversation with the cashier about the Rewards Program, and her provision of her cellular phone number to the cashier, suggest the text was directed specifically to her, and not sent by an ATDS.  (*Id.* ¶ 14.)  Indeed, Plaintiff's own account is inconsistent with the sort of random or sequential number

generation required for an ATDS.  On this additional basis, Plaintiff's Complaint should be dismissed with prejudice under Rule 12(b)(6).

**B.**     **In the Alternative, This Court Should Stay This Case**
          **Pending the D.C. Circuit's Decision in *ACA International*.**

### 1.     Legal Standard

If the Court is reluctant to dismiss Plaintiff's Complaint, which it should not be, Defendants seek to stay this matter pending the D.C. Circuit's decision in *ACA International*.  In *ACA International*, the D.C. Circuit is poised to decide the type of technology that falls within the definition of an ATDS under the TCPA.  This decision is expected to impact numerous litigations asserting TCPA claims involving text messages, because of the dispositive question as to whether an ATDS was used.  *See, e.g., Marks v. Crunch San Diego*, No. 14-56834, Order Staying Appeal (ECF No. 62) (9th Cir. Dec. 14, 2016) (staying decision on appeal regarding TCPA claims based on text messages pending *ACA International*).

A District Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997), *citing Landis v. North Am. Co.*, 299 U.S. 248 (1936).  When considering whether to stay proceedings, courts must consider: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005), *citing CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962)).

Courts, including the Ninth Circuit and numerous district courts, have entered stays pending the D.C. Circuit's ruling in *ACA International* where the definition of an ATDS is at issue.  *See Marks v. Crunch San Diego,* No. 14-56834, Order Staying Appeal (ECF No. 62) (9th Cir. Dec. 14, 2016); *Clayton v. Synchrony Bank*, 219 F. Supp. 3d 1006, 1011 (E.D. Cal. 2016); *see also Brickman v. Facebook, Inc.*, Case No. 16-cv-00751-TEH, 2017 WL 1508719, at *5 (N.D. Cal. Apr. 27, 2017) ("the Court joins the several other courts in this Circuit that have decided the balancing of interests weigh in favor of a stay pending the *ACA International* decision"); *Gage v.*

*Cox Communications, Inc.*, Case No. 2:16-cv-02708-KJD-GWF, 2017 WL 1536220, at *2 (D. Nev. Apr. 27, 2017) (accord); *Doerken v. USAA Savings Bank*, Case No. CV 16-08824-RSWL-MRW, 2017 WL 1534186, at *3 (C.D. Cal. Apr. 26, 2017) (accord); *Small v. GE Capital, Inc.*, Case No. EDCV 15-2479 JGB (DTBx), 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016) ("Given the absence of any prejudice to Plaintiff, the possibility the ruling may dispose of Plaintiff's claims against [defendant], and the advanced stage of the proceedings in *ACA International*, the Court finds it more efficient to stay this action pending a ruling by the D.C. Circuit in ACA International."); *Errington v. Time Warner Cable Inc.,* Case No. 2:15-CV-02196 RSWL (DTB), 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) ("Any Order by this Court which is issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling. Accordingly, the Court and both parties will benefit from a clarification of the applicable law."); *Fontes v. Time Warner Cable Inc.,* Case No. CV-14-2060-CAS(CWX), 2015 WL 9272790, at *4 (C.D. Cal. Dec. 17, 2015) (accord); *Pichardo v. Amerigroup Corp.*, No. 2:17-cv-0276-RFB-CWH, 2017 U.S. Dist. LEXIS 88691, at *2 (D. Nev. June 8, 2017) (accord); *French v. Nationstar Mortgage, LLC*, No. 2:17-cv-00925-GMN-NJK, 2017 U.S. Dist. LEXIS 104586, at *2 (D. Nev. July 6, 2017) (accord); *Andrews v. Ocwen Loan Servicing, LLC,* No. 2:17-cv-01255-JAD-VCF, 2017 U.S. Dist. LEXIS 107711, at *2 (D. Nev. July 12, 2017) (accord).

Numerous courts in other jurisdictions have similarly entered stays pending the disposition of *ACA International. See Reynolds v. Time Warner Cable, Inc.*, Case No. 16-CV-6165W, 2017 WL 362025, at *2 (W.D.N.Y. Jan. 25, 2017) ("Surely, the *ACA International* decision, whatever its outcome and scope, will clarify many of the issues raised by this litigation and ensure the determination of those issues under the correct legal standards, thus minimizing the risk of revisiting legal determinations on reconsideration or on appeal."); *Jones v. Credit Acceptance Corp.*, Case No. 15-13165, 2016 WL 7320919, *3 (E.D. Mich. Oct. 31, 2016) ("In light of the uncertainty surrounding the proper interpretation of the TCPA and the lack of demonstrated prejudice to [plaintiff], the interest of judicial economy warrants a stay."), *report and recommendation adopted*, 2016 WL 7242141 (E.D. Mich. Dec. 15, 2016); *Rajput v.*

*Synchrony Bank*, Case No. 3:15-CV-1595, 2016 WL 6433150, at *8 (M.D. Pa. Oct. 31, 2016) (accord); *Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 823 (D. Minn. 2016) (accord); *Coatney v. Synchrony Bank*, Case No. 6:16-CV-389-ORL-22TBS, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016) (accord); *Rose v. Wells Fargo Advisors, LLC*, Case No. 1:16-CV-562-CAP, 2016 WL 3369283, at *2 (N.D. Ga. June 14, 2016) (accord); *Williams v. TGI Friday's Inc.,* Case No. 4:15-CV-1469 RLW, 2016 WL 1453032, at *3 (E.D. Mo. Apr. 12, 2016) (accord); *Acton v. Intellectual Capital Mgmt., Inc.*, Case No. 15-CV-4004(JS)(ARL), 2015 WL 9462110, at *3 (E.D.N.Y. Dec. 28, 2015) (accord).

If this Court does not dismiss Plaintiff's Complaint (which it should), it should alternatively enter a stay, as multiple other Courts have, pending decision in *ACA International*.

### 2.   All of the *Landis* Factors Favor the Entering of a Stay Here

Plaintiff's claims here pose no bar to a stay of this matter. Plaintiff is seeking only statutory money damages and injunctive relief. A delay in the potential receipt of money damages is not a sufficient reason to justify denial of a stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962) (holding that a delay in a party's pursuit of money damages is insufficient to support denial of a stay of proceedings). Additionally, a claim for injunctive relief does not warrant the denial of a stay where the alleged wrongful conduct has already ceased. *See Reynolds*, 2017 WL 362025, at *2; *Ramirez v. Trans Union, LLC*, Case No. 12-cv-00632-JSC, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015). Also, Plaintiff here alleges the receipt of only a single text message, and does not allege that she is continuing to receive such messages. Injunctive relief is, therefore, not required.

Further, Plaintiff will not suffer any prejudice from a relatively short stay of these proceedings pending the decision from the D.C. Circuit. *ACA International* has been fully briefed and was argued on October 19, 2016. The D.C. Circuit's average time from oral argument to a decision is 3.7 months. *See* U.S. Courts Statistics & Reports Table B-4, U.S. Courts of Appeals-Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2015, http://www.uscourts.gov/sites/default/files/data_tables/B04Sep15.pdf. It is anticipated that a decision will be issued in the near term.

1    Accordingly, a stay of this action would not be indefinite and is not likely to be long.  *See*

2    *Reynolds*, 2017 WL 362025, at *2 (granting stay as of January 25, 2017); *Errington*, 2016 WL

3    2930696, at *4 ("the appeal before the D.C. Circuit is not likely to remain pending for an extended

4    period of time, and the possible prejudice to Plaintiff is minimal").  All of the factors required to

5    enter a stay pending the D.C. Circuit's decision in *ACA International* are present here.

6            Moreover, both parties will benefit from a ruling from the D.C. Circuit that will potentially

7    dispose of the case altogether, or narrow the issues for discovery and any subsequent dispositive

8    motions.  Neither party will suffer damage or harm if the Court enters a stay of proceedings in

9    this matter.

10          If a stay is not granted, Defendants – and Plaintiff, for that matter – will suffer harm in the

11   form of unnecessary litigation fees and expenses and an uncertain scope of discovery in this

12   purported class action.  Courts have found that a party can demonstrate hardship or inequity where

13   failing to stay the proceedings could deprive that party of the opportunity to wait for another

14   decision on a potentially controlling point of law.  *See Clayton*, 219 F. Supp. 3d at 1011 ("because

15   the ruling in *ACA International* may completely dispose of . . . Plaintiff's claims . . . [,] the parties

16   should not have to engage in discovery related to a claim that may not be viable").  Indeed, both

17   parties "suffer hardship in conducting discovery and trial preparation in light of the uncertain[ty]"

18   surrounding "the definition of an ATDS." *Erringto*n, 2016 WL 2930696, at *4; *see also Frable*,

19   215 F. Supp. 3d at 821 ("both parties could incur unnecessary litigation fees and expenses if a

20   stay is not granted"); *Rajput*, 2016 WL 6433150, at *4 (accord).  Numerous courts have granted

21   stays for this reason.  *See, e.g., Reynolds*, 2017 WL 362025, at *2-3 (collecting cases).

22   Accordingly, Defendants – along with Plaintiff – will suffer hardship if a stay is not granted.

23          Finally, beyond clarifying applicable law, a brief stay of this matter will also streamline

24   the present proceedings by simplifying central, dispositive issues while promoting judicial

25   economy.  This Court will very likely be called upon to interpret the *July 2015 FCC Order* and

26   apply it to the facts of this case.  But any determination based upon the *July 2015 FCC Order* will

27   very likely subsequently be called into question or superseded if the D.C. Circuit vacates the 2015

28   Order or otherwise modifies the Order's interpretation of what constitutes an ATDS.  Indeed, the

D.C. Circuit's ruling could entirely extinguish Plaintiff's TCPA claims.  *Errington*, 2016 WL 2930696, at *4 ("[G]ranting a stay may simplify the issues in this case and conserve judicial resources.  An Order by this Court which is issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling.").

In sum, a stay pending a decision in *ACA International* will clarify a critical legal issue in this case and will thereby focus discovery and streamline this litigation.  Moreover, "if a stay in this action is not entered the Court would be leaving the door open for the possibility that during the course of discovery, drafting of motions, or while dispositive motions are pending the D.C. Circuit issue[s] its decision in *ACA International* that would then require additional discovery or renewed motions."  *Rajput*, 2016 WL 6433150, at *8.  Accordingly, and in the event that the Court declines to dismiss Plaintiff's Complaint (which it should not), Defendants request that the Court enter a stay of proceedings in this matter.

## <u>CONCLUSION</u>

For the foregoing reasons Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiff's Complaint with prejudice, or, in the alternative, grant their Motion to Stay.

DATED: June 21, 2017                    KELLEY DRYE & WARREN LLP

                                        By:    /s/ Miles M. Cooley
                                        Miles M. Cooley
                                        Attorneys for Defendants
                                        *The Häagen-Dazs Shoppe Company, Inc.,*
                                        *Nestlé Dreyer's Ice Cream Company and*
                                        *Nestlé USA, Inc.*

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE STAY THIS ACTION